IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | | |
|---|---|---|
| MARY J. POOR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 6:14-cv-7 |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff Mary J. Poor ("Poor") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding her not disabled and therefore ineligible for disability insurance benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433. Poor alleges that the ALJ failed to develop the record and did not properly evaluate the medical evidence. Poor also asserts that the case should be remanded to the Commissioner to consider new evidence submitted to the Appeals Council. I conclude that remand of the Commissioner's decision is proper in light of the additional evidence. Accordingly, I **RECOMMEND DENYING** the Commissioner's Motion for Summary Judgment (Dkt. No. 14), **GRANTING IN PART** Poor's Motion for Summary Judgment (Dkt. No. 11), and reversing and remanding this case for further administrative consideration consistent with this Report and Recommendation.

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Poor failed to demonstrate that she was disabled

1

under the Act.[1] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Poor filed for DIB on April 28, 2011, claiming that her disability began on March 1, 2011, due to fibromyalgia, migraines, leg problems, and diabetes. R. 178-79, 194. Her protective filing date is March 24, 2011. R. 190. The state agency denied her application at the initial and reconsideration levels of administrative review. R. 82-92, 94-104. On October 16, 2012, ALJ Brian B. Rippel held a hearing to consider Poor's disability claim. R. 34-81. Poor was represented by an attorney at the hearing, which included testimony from Poor, her sister Nancy Parkhurst, and vocational expert Barry Hensley. R. 34-81.

On October 25, 2012, the ALJ entered his decision analyzing Poor's claim under the familiar five-step process[2] and denying her claim for benefits. R. 16–33. The ALJ found that

---

[1] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

[2] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. The burden shifts to the Commissioner at the fifth step to establish that the claimant maintains the residual functional capacity ("RFC"), considering the

2

Poor was insured at the time of the alleged disability onset and that she suffered from the severe impairments of diabetes mellitus, peripheral neuropathy, fibromyalgia, osteoarthritis, and obesity. R. 21-22. The ALJ determined that these impairments, either individually or in combination, did not meet or medically equal a listed impairment. R. 22-23. The ALJ concluded that Poor retained the residual functional capacity ("RFC") to perform sedentary work,[3] "involving frequent use of foot controls bilaterally, only occasional climbing of ramps/stairs, balancing, stooping, kneeling, crouching, or crawling, no climbing of ladders/ropes/scaffolds, and an avoidance of concentrated exposure to cold, heat, and all workplace hazards (including unprotected heights and machinery)." R. 23. The ALJ decided that Poor could return to her past relevant work, both as actually performed and as generally performed in the national economy. R. 28. Thus, the ALJ concluded that she was not disabled. R. 28-29.

Poor appealed the ALJ's decision, and submitted additional medical records to the Appeals Council. R. 14, Dkt. No. 12-1. On December 31, 2013, the Appeals Council denied Poor's request for review (R. 1-6) and this appeal followed.

## ANALYSIS

Poor contends that her claim should be remanded for further administrative consideration on the basis of additional medical records that were not before the ALJ, but were later submitted to the Appeals Council. A number of the records submitted to the Appeals Council documented

---

claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

[3] An RFC is an assessment, based upon all of the relevant evidence, of what a claimant can still do despite her limitations. 20 C.F.R. § 404.1545. Descriptions and observations of a claimant's limitations by her and by others must be considered along with medical records to assist the Commissioner in deciding to what extent an impairment keeps a claimant from performing particular work activities. Id. The Social Security Administration classifies jobs as sedentary, light, medium, heavy, and very heavy. 20 C.F.R. § 404.1567(a).

Poor's treatment for her severe impairment of peripheral neuropathy.[4] See Dkt. No. 12-1. The Appeals Council accepted Poor's submissions dated through the ALJ's decision and rejected all of her records dated after the ALJ's decision. R. 2, 730-58. Despite accepting records from Poor's treating physician Murray E. Joiner, M.D.,[5] which addressed much of her treatment for neuropathy not previously included in the record, the Appeals Council summarily found that the records did not provide a basis for changing the ALJ's decision. R. 2. I find that in light of this additional evidence regarding Poor's extensive treatment for neuropathy, remand is proper to consider the evidence within the record as a whole.

When deciding whether to grant review, the Appeals Council must consider additional evidence, "if the additional evidence is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision." Wilkins v. Sec'y, Dep't of Health and Human Servs., 953 F.2d 93, 95–96 (4th Cir. 1991). Evidence is new if it is not duplicative or cumulative. Evidence is material if there is a reasonable possibility that the new evidence would have changed the outcome. The Appeals Council does not require good cause to admit previously existing records. Id. Upon the Appeals Council's denial of Poor's request for review, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 404.981. As such, this Court must "review the record as a whole, including the new evidence, in order to determine whether substantial evidence supports the [Commissioner's] findings." Wilkins, 953 F.2d at 96. "However, the Fourth Circuit has also admonished that it is the role of the ALJ, and not

---

[4] Poor submitted a series of new records to the Appeals Council. In addition to Dr. Joiner's records, the additional submissions include a Spinal Cord Stimulator Assessment conducted by John Heil, DA, FAPA, FAASP; treatment records from her treating physician for hypertension, Darlene Nigro, D.O.; treatment records from Chrystal Bishop, FNP; and a treatment record from Virginia Skin & Vein. Dkt. No. 12-1.

[5] The Appeals Council wrote that it did not accept medical records from Dr. Joiner, which they claimed dated from November 7, 2012 through December 18, 2012. Dr. Joiner's records in fact dated from October 3, 2011 through November 7, 2012. R. 730-55 & Dkt. No. 12-1, p. 4-6. However, the Appeals Council added all of Dr. Joiner's records into the administrative record, with the exception of his November 7, 2012 treatment record. Therefore, it appears that the Appeals Council reviewed the large majority of Dr. Joiner's records.

4

reviewing courts, to resolve conflicts in the evidence." Davis v. Barnhart, 392 F. Supp. 2d 747, 751 (W.D. Va. 2005) (citing Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996)). Thus, when faced with new evidence, a court must reconcile its duty under Wilkins to review the entire record including the new evidence to determine if there is a reasonable possibility that it would change the outcome, with its obligation under Smith to abstain from making credibility determinations and resolving factual conflicts. Davis, 392 F. Supp. 2d at 751.

Courts in this district have achieved that balance by reviewing the record as a whole to determine if the new evidence is contradictory, presents material competing testimony, or calls into doubt any decision grounded in the prior medical reports. If the new evidence creates such a conflict, there is a reasonable possibility that it would change the outcome of the case, and the case must be remanded to the Commissioner to weigh and resolve the conflicting evidence. If such conflicts are not present, the case can be decided on the existing record without a remand. Id. (citing Bryant v. Barnhart, No. 6:04cv000017, 2005 WL 1804423, *5 (W.D. Va. Jan 21, 2005); Smallwood v. Barnhart, No. 7:03cv00749, slip op. at 2 (W.D. Va. Oct. 19, 2004); Ridings v. Apfel, 76 F. Supp. 2d 707, 709 n.6 (W.D. Va. 1999); Thomas v. Commissioner, 24 F. App'x 158, 162, 2001 WL 1602103, at *4 (4th Cir. 2001) (unpublished opinion); McConnell v. Colvin, No. 2:02cv00005, 2013 WL 1197091, at *7 (W.D. Va. March 25, 2013)).

The administrative record shows that Poor has numerous physical impairments, causing the ALJ to find that Poor can only perform sedentary work with multiple limitations. R. 23. The ALJ determined that Poor suffers from the severe impairments of diabetes mellitus, peripheral neuropathy, fibromyalgia, osteoarthritis, and obesity. R. 21. The ALJ found that notwithstanding the listed severe impairments, Poor was not disabled because "the degree of severity alleged lacks support and consistency with the other evidence of record." R. 26. The

5

record did not include any treatment records from Dr. Joiner, despite Poor referring to her treatment with him during the ALJ's hearing. R. 51.

Poor regularly sought treatment from Dr. Joiner for peripheral neuropathy and chronic pain. R. 730-741, 749-755. On October 3, 2011, Poor visited Dr. Joiner for the first time, where he completed an initial assessment for her bilateral lower extremity pain. R. 750-55. Dr. Joiner noted her 15-year history of diabetic peripheral neuropathy, as well as her complaints of neck pain, low back pain, and spasms. R. 750-51, 754. Dr. Joiner referred her for an electromyogram (EMG) of her extremities and an MRI of her lumbar spine, and recommended that she participate in physical therapy. R. 754. Poor had an MRI on October 6, 2011 at Bedford Memorial Hospital, where Kenneth C. Hite, M.D. determined that she had a "multilevel mild broad based disc bulging and facet arthrosis most pronounced at L4-5 and L5-S1." R. 748. She also underwent an EMG and nerve conduction studies on October 21 and 27, 2011, which revealed an abnormal study with evidence supporting a finding of moderate bilateral median neuropathy, or carpal tunnel syndrome, in both wrists and moderate sensorimotor peripheral neuropathy. R. 742-46.

Poor returned for a follow-up visit with Dr. Joiner on December 1, 2011. R. 738-41. He noted that since their last appointment, Poor went to the hospital because of "intense leg complaints" and that she had not attended physical therapy due to "financial limitations."[6] R. 738-39. Dr. Joiner diagnosed Poor with chronic bilateral lower extremity pain secondary to diabetic peripheral neuropathy, as well as other ailments such as chronic low back pain, mild lumbar degenerative disc disease and bulge, myalgia, and moderate carpal tunnel syndrome.

---

[6] Poor noted her financial limitations multiple times in the administrative record, providing credibility to her statements about why she did not try physical therapy. She expressed difficulty paying for her prescription of Lyrica in February 2012. R. 732. She also reiterated her inability to pay the $25 co-pays for physical therapy in April 2012 to Dr. Joiner. R. 730.

6

R. 740. Dr. Joiner recommended physical therapy and changes in medication, and found that Poor "may ultimately be a candidate for spinal cord stimulator trial in presence of severe diabetic peripheral neuropathy unresponsive to conservative intervention." R. 740-41. On December 28, 2011, Poor again met with Dr. Joiner, where they discussed the dorsal column stimulator implant trial. R. 735-37. Poor resisted entering the trial at the time of their appointment. R. 736.

Following-up during a February 5, 2012 appointment, Poor told Dr. Joiner that her neuropathy symptoms were worse at night, leaving her unable to sleep more than three hours due to her lower extremity pain. R. 732. Upon examination of her spinal column, Dr. Joiner found that she had "reproducible trigger points in the lumbar multifidus, bilateral L5-S1." R. 733. Importantly, Dr. Joiner determined at this appointment that Poor had reached her maximum medical improvement with only conservative treatment. R. 734. Poor again rejected Dr. Joiner's recommendation of the spinal cord stimulator trial, vigorously opposing the trial because "she has no desire to have anything implanted in her spine." R. 732. Dr. Joiner recommended the alternative procedure of trigger point spinal injections of a Marcaine, Lidocaine, and Serapin solution; he began the injections during the February appointment. R. 732-33. Poor met with Dr. Joiner to review her treatment plan on April 30, 2012. R. 730-31. Poor reported that her pain was worse and that she remained uninterested in the dorsal column stimulator implant trial. R. 730.

In his decision denying benefits entered on October 25, 2012, the ALJ found that Poor's symptoms of peripheral neuropathy constituted a severe impairment, but did not find that it rose to the level of a disability. R. 21, 28. The ALJ explained that Poor's neuropathy and other symptoms did "not generally receive the type of medical treatment one would expect for a totally disabled individual." R. 26. In the section of the decision explaining his conclusion that Poor

7

was capable of performing a range of sedentary work, the ALJ reviewed an October 2011 MRI, hospital visits from late 2011, and treatment records from Darlene Nigro, D.O., Alan Kauppi, M.D., and Chrystal Bishop, FNP.  R. 25-26.  The ALJ also reviewed the August 2011 consultative physical examination from William Humphries, M.D. and examinations by state agency physicians.  R. 26-27.  Notably, the ALJ did not have any records from Dr. Joiner and none of the state agency or consultative examiners reviewed Dr. Joiner's records in their analyses.  The ALJ concluded that Poor was limited to lifting 10 pounds occasionally and less than 10 pounds frequently, as well as only occasional climbing of ramps/stairs, balancing, stooping, kneeling, crouching, or crawling, and no climbing of ladders/ropes/scaffolds.  R. 23.

In a November 7, 2012 record rejected by the Appeals Council but provided to the court, Dr. Joiner noted that Poor's pain complaints had continued and that she denied any intervening medical issues since her last appointment.  Dkt. No. 12-1, p. 4.  Significantly, Poor changed her mind and "decided to proceed with a spinal cord stimulator as previously outlined."  Dkt. No. 12-1, p. 4.  As part of his treatment plan, Dr. Joiner provided new medications to treat Poor's increased pain and spasms, as well as began the facilitation for pre-procedure authorization of the spinal cord stimulator trial.  Dkt. No. 12-1, p. 5-6.

I find that the additional evidence regarding Dr. Joiner's treatment records meets the requirements of Wilkins, and that remand is proper for full consideration of these records.  As an initial matter, the Appeals Council accepted all but one of Dr. Joiner's records, which demonstrates that they viewed the records as new, material, and relating back to the time of the ALJ's decision.  The Commissioner does not dispute that the records are "new" in that they were not present in the record before the ALJ's decision.  Dkt. No. 18.  Although the Commissioner contended at the hearing that Dr. Joiner's records are cumulative with the rest of Poor's medical

8

record, the court finds no merit to this argument. Dkt. No. 18. The administrative record before the ALJ did include diagnoses, a consultative examination, and some treatment records for Poor's peripheral neuropathy. See, e.g., R. 281-84, 304, 324, 340-41, 385, 389, 399, 401, 696, 700. However, the administrative record did not show the pattern of extensive treatment Dr. Joiner had provided for Poor's peripheral neuropathy and chronic back pain. His records included her progress, treatment plans, and his recommendations. R. 730-55, Dkt. No. 12-1, p. 4-6. Unlike any other record before the ALJ, Dr. Joiner's records show a specialist developing an increasingly aggressive plan to treat her neuropathy. His records are not cumulative of the records of diagnoses and hospital visits before the ALJ. Dr. Joiner's records plainly are new.

Dr. Joiner's records relate back to the time of the ALJ's decision. All but one of his treatment records were generated prior to the ALJ's decision in October 2012, and were accepted by the Appeals Council. R. 730-58. Although Dr. Joiner's November 2012 treatment record was provided after the ALJ's decision, I find that this treatment sufficiently relates back to the relevant period. The November record reviews the same neuropathy and treatment plan that had been the focus of Dr. Joiner's treatment for the past year. Dkt. No. 12-1, p. 4-6. There is no suggestion of an intervening injury or deterioration in the condition of Poor's neuropathy following the ALJ's decision, the proper remedy for which would be re-filing a new claim for benefits. Dkt. No. 12-1, p. 4 ("The patient denied intervening medical issues."). To the contrary, the evidence suggests that Poor finally agreed to Dr. Joiner's recommendation of the spinal cord stimulator, which Poor was wary of trying prior to the ALJ's decision.[7] Dkt. No. 12-1, p. 4. Therefore, I find that the additional evidence surrounding Poor's November 2012 appointment with Dr. Joiner relates back to the relevant time period before the ALJ's decision.

---

[7] It should be noted that Poor refused the spinal cord stimulator during its trial phase. R. 741. Refusing to move forward with treatment that has not been standardized does not suggest to the court that her pain was any less serious than it would have been if she had immediately agreed to the surgery.

9

See, e.g., Reynolds v. Astrue, 7:07CV00586, 2008 WL 3910833, at *3 (W.D. Va. Aug. 25, 2008) (remanding where additional evidence from less than two months after ALJ's decision documented a need for back surgery where there was no evidence of intervening event).

I further find that all of Dr. Joiner's records are material, as they call into doubt the ALJ's determination that Poor's neuropathy does not amount to a disability. The law is clear that "[t]he duty to resolve conflicts in the evidence rests with the ALJ, not with the reviewing court." Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996) (citing Kasey v. Sullivan, 3 F.3d 75, 79 (4th Cir. 1993)). In this case, no fact finder has made any findings as to Dr. Joiner's reports. The ALJ's decision denying Poor's claims for peripheral neuropathy was supported by substantial evidence given the information in the record before the ALJ at the time of his decision. He found that the "degree of severity alleged lacks support and consistency with the other evidence of record. The claimant has not generally received the type of medical treatment one would expect for a totally disabled individual." R. 26. Without any of Dr. Joiner's records, very little evidence of treatment for neuropathy was before the ALJ after September 2011. See generally R. 24-26 (summarizing the treatment evidence before the ALJ). However, Dr. Joiner's treatment may be the type expected of a totally disabled individual. During the course of Dr. Joiner's treatment with Poor beginning in October 2011, his records show an increasingly aggressive plan to treat her neuropathy. It is concerning that none of these treatment records were before the ALJ when making his decision, particularly when Poor was already relegated to a sedentary RFC. There is a reasonable possibility that evidence regarding Poor's treatment for neuropathy and Dr. Joiner's recommendations to participate in the spinal cord stimulator trial would change the ALJ's decision. Dr. Joiner's reports are new, they relate back to the relevant time period, and they

include severe diagnoses that may require additional restrictions, both by the ALJ and by any consultative examiners who did not have the opportunity to review Dr. Joiner's records.

In light of the ALJ's finding that Poor was not disabled and the additional evidence of her treatment records during the time prior to and shortly after the ALJ's decision, I am unable to determine whether substantial evidence supports the final decision of the Commissioner to deny benefits to Poor. The subsequent evidence provided by Dr. Joiner calls into question whether Poor in fact lacked the type of medical treatment that often occurs for disabled individuals. The ALJ did not have an opportunity to consider Dr. Joiner's treatment records for Poor's neuropathy. There has been no evaluation or medical opinion as to what, if any, Dr. Joiner's treatment and recommendation to try the spinal cord stimulator trial show about Poor's functional ability. The court cannot speculate as to the impact of Dr. Joiner's treatment records on the ALJ's decision.

It may be that evidence of Dr. Joiner's treatment records does not alter the outcome of the ALJ's analysis. That decision does not rest with the court, however, and as there is a sufficient probability that the additional evidence will change the outcome, the law requires that I remand the case. See, e.g., Burton v. Colvin, CA 4:11-03335-CMC, 2013 WL 3551120, at *3 (D.S.C. July 11, 2013) ("In light of the new evidence that appears to conflict with one or more critical bases in the ALJ's opinion, and the lack of explanation by the Appeals Council as to why that new evidence did not affect Plaintiff's disability determination, the court cannot say that the ALJ's decision is supported by substantial evidence."). I therefore recommend remanding Poor's claim under sentence four of 42 U.S.C. § 405(g) for consideration of this additional evidence and the record as a whole. Because I recommend remand on the basis of additional evidence, I need not address Poor's additional arguments regarding the ALJ's failure to develop the record or

11

evaluation of the medical evidence. Upon remand, however, the ALJ should carefully consider the record pursuant to the regulations, including the additional evidence submitted to the Appeals Council, in evaluating Poor's claim.

## CONCLUSION

By making this finding, the court does not suggest that these records conclusively establish disability. Indeed, this evidence ultimately may not have any bearing on the ALJ's RFC assessment or the Commissioner's disability determination. However, the court is charged with reviewing "the record as a whole, including the new evidence, in order to determine whether substantial evidence supports the Secretary's findings." Wilkins, 953 F.2d at 96. Here, there is a reasonable probability that the ALJ may reach a different conclusion upon consideration of the record as a whole, including Dr. Joiner's reports. Accordingly, I recommend that the defendant's motion for summary judgment be **DENIED**, Poor's motion for summary judgment be **GRANTED IN PART**, and this case be **REVERSED** and **REMANDED** under sentence four of 42 U.S.C. § 405(g) with instructions that the ALJ consider Dr. Joiner's reports dated October 3, 2011 through November 7, 2012.

The clerk is directed to transmit the record in this case to the Honorable Norman K. Moon, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days. Any adjudication of fact or conclusion of law rendered herein by the undersigned that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings, as

well as to the conclusion reached by the undersigned, may be construed by any reviewing court as a waiver of such objection.

                                         Enter: February 19, 2015

*Robert S. Ballou*

                                         Robert S. Ballou
                                         United States Magistrate Judge